IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFRED ALONZO MAYO,** | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 3: 13-CV-1174** |
| | : | |
| **v.** | : | **(Judge Caputo)** |
| | : | |
| **JOHN WETZEL, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

In its current form this case presents a singular set of circumstances.  The *pro se* plaintiff, a state prisoner, has sued his jailers, including defendant Dr. Mary Ann Koza, a prison psychiatrist, alleging violations his constitutional rights in a number of respects.  Some sixteen months ago, in January of 2014, Dr. Koza moved to dismiss this complaint, (Doc. 33.), citing a profound procedural failure by the plaintiff, a failure to exhaust administrative remedies within the prison system before filing this complaint.  Such administrative exhaustion is required by law before an inmate may proceed into federal court.

Having been cited by the defendant more than a year ago for this profound procedural shortcoming, the plaintiff has compounded this error by failing to respond to the motion to dismiss.  Thus, a plaintiff who is alleged to have ignored one set of

important procedural rules, has now discounted a second set of cardinal procedural benchmarks.  In this face of this cascading array of procedural failures, we recommend that this action be dismissed.

The plaintiff, Alfred Mayo, is a state inmate who was formerly housed at the State Correctional Institution (SCI) Dallas.  Mayo commenced this action by filing a complaint in May of 2013, (Doc.1.), a complaint which Mayo subsequently amended in October 2013.  (Doc. 10.)  In this amended complaint Mayo brought various federal civil rights claims under 42 U.S.C. §1983, alleging that he had been subjected to conditions of confinement which constituted cruel and unusual punishment in violation of the Eighth Amendment, and had also been forced to endure numerous acts of retaliation as a result of the exercise of his First Amendment rights.  (Id.)  This amended complaint named more than three dozen defendants in these constitutional tort claims.  (Id.)

Including among these three dozen defendants was Dr. Koza, a prison psychiatrist.  With respect to Dr. Koza, Mayo's well-pleaded allegations are extraordinarily sparse.  According to Mayo, in September 2012 he advised Dr. Koza that he was feeling extreme anxiety.  (Doc. 10, ¶55.)  Dr. Koza immediately responded to Mayo's concern, encouraging and counseling him, and offering to adjust his anti-anxiety medications.  (Id., ¶56.)  Two months later, in November 2012, Mayo asked

that Dr. Koza appear as a witness at a disciplinary hearing. (Id., ¶¶64-66.) Dr. Koza did not respond to this request, but the hearing officer who presided over this disciplinary hearing denied this request. (Id.) It is upon these thin reeds that Mayo brought Dr. Koza into this lawsuit.

As a *pro se* litigant the plaintiff was advised by this court at this outset of this lawsuit of his responsibilities in this litigation. Thus, on May 2, 2013, the district court entered its Standing Practice Order in this case, an order which informed the plaintiff of his responsibility to reply to defense motions, and warned him in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 4, p.2.)

On January 27, 2014, defendant Koza filed a motion to dismiss in this case. (Doc. 33.) This motion raised a straightforward legal claim, arguing that the plaintiff had failed to exhaust his administrative remedies within the prison before filing this lawsuit, something that prisoner plaintiffs are required by law to do as a prerequisite to seeking relief in federal court. See 42 U.S.C. §1997e(a). In support of this motion

the defendant submitted undisputed prison records, records which show that the only fully exhausted grievance filed by Mayo that named Dr. Koza was filed in June 2012, months prior to the events set forth in this complaint, and involved entirely unrelated issues.  (Doc. 34-2, pp. 41-42.)

The plaintiff has never responded to this motion to dismiss,[1] and the time for responding has now long since passed.  Therefore, in the absence of any timely response by the plaintiff, we will deem the motion to dismiss to be ripe for resolution.

For the reasons set forth below, we recommend that this motion to dismiss be granted.

## II.    Discussion

### A.    Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion to dismiss, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case.  This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this court warrants dismissal of the action, since  Local Rule 7.6 of the Rules

---

[1]Mayo has filed a response to a separate motion to dismiss, (Doc. 39.), but that response does not address in any fashion Dr. Koza's claims or her motion to dismiss.

of this Court imposes an affirmative duty on the plaintiff to respond to motions and

provides that

> Any party opposing any motion, other than a motion for summary
> judgment, shall file a brief in opposition within fourteen (14) days after
> service of the movant's brief, or, if a brief in support of the motion is not
> required under these rules, within seven (7) days after service of the
> motion. *Any party who fails to comply with this rule shall be deemed not
> to oppose such motion.* Nothing in this rule shall be construed to limit
> the authority of the court to grant any motion before expiration of the
> prescribed period for filing a brief in opposition. A brief in opposition
> to a motion for summary judgment and LR 56.1 responsive statement,
> together with any transcripts, affidavits or other relevant documentation,
> shall be filed within twenty-one (21) days after service of the movant's
> brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to

dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with

the [R]ule after a specific direction to comply from the court.' Stackhouse v.

Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc.,

No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the

plaintiff has not complied with the Local Rules, or this Court's Standing Practice

Order, by filing a timely response to this motion. Therefore, these procedural defaults

by the plaintiff compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. *See*
> Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve
> cases on their merits whenever possible. However, justice also requires

that the merits of a particular dispute be placed before the court in a timely fashion ....." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." <u>Id.</u> Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss. These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion to dismiss.

## B.    <u>Dismissal of this Case Is Also Warranted Under Rule 41</u>

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for

failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)). Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether

a district court abused its discretion in dismissing a plaintiff's case.  Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)."  Briscoe v. Klaus,  538 F.3d at 263.  Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,'  Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.'  Mindek, 964 F.2d at 1373."  Briscoe v. Klaus,  538 F.3d at 263.  Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.  See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that with respect to Dr. Koza's motion to dismiss the delays in this case are attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case against Dr. Koza, or respond to this defense motion.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted).  Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id</u>.; <u>see also Ware v. Rodale Press, Inc</u>., 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988).  It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222.

<u>Briscoe  v. Klaus</u>, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim against Dr. Koza or comply with court orders now wholly frustrates and delays the resolution of this action as to defendant Koza.  In such instances, the defendant is plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case against defendant Koza clearly rests in the discretion of the trial judge.  <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); <u>Reshard v. Lankenau</u>

Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action against Dr. Koza is now appropriate.   In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.'  Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted).  Here, the plaintiff has allegedly failed to exhaust his administrative remedies before filing this lawsuit against Dr. Koza and now has failed for more than a year to respond to a defense motion which highlights this earlier procedural failure.  The plaintiff has also failed to timely file pleadings, and has not complied with the Standing Practice Order of the Court.   Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case.  In this setting we

must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has violated the Local Rules and failed to respond to this motion to dismiss for the past year, the court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our Standing Practice Order counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser

sanctions have been tried, and have failed, only the sanction of dismissal remains available to the court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims.  In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant.  The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him.  Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus,  538 F.3d at 263.  Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, the plaintiff's claims clearly fail on their merits with regard to Dr. Koza, yet another factor which favors dismissal of this defendant from this action.  The legal flaws inherent in the claims against Dr. Koza are discussed separately below.

## C.   The Plaintiff's Claims Fail on Their Merits

As we have previously observed, this case presents an extraordinary circumstance.  The plaintiff, a state prisoner, has sued Dr. Koza, alleging that she violated his constitutional rights.  However, it appears that the plaintiff has indulged in a profound procedural failure, a failure to exhaust administrative remedies within the prison system before filing this complaint.  Having been cited by the defendant for this profound procedural shortcoming, the plaintiff has compounded this error by failing to respond to the motion to dismiss.  Thus, a plaintiff who is alleged to have ignored one set of important procedural rules, has now discounted a second set of procedural benchmarks.

In this case the plaintiff's failure to timely pursue these administrative remedies–which is undisputed on this record–has substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here grounded in alleged

violations of the Eighth Amendment.  <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir.

2004); <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000).   While this exhaustion

requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced

by the courts.   This rigorous enforcement is mandated by a fundamental recognition

that § 1997e's exhaustion requirement promotes important public policies.  As the

United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of
> exhaustion requirements.   They include (1) avoiding premature
> interruption of the administrative process and giving the agency a chance
> to discover and correct its own errors; (2) conserving scarce judicial
> resources, since the complaining party may be successful in vindicating
> his rights in the administrative process and the courts may never have to
> intervene; and (3) improving the efficacy of the administrative process.
> Each of these policies, which Congress seems to have had in mind in
> enacting the PLRA, is advanced by the across-the-board, mandatory
> exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion
> requirement better serves the policy of granting an agency the
> "opportunity to correct its own mistakes with respect to the programs it
> administers before it is haled into federal court."  Moreover, "even if the
> complaining prisoner seeks only money damages, the prisoner may be
> successful in having the [prison] halt the infringing practice" or fashion
> some other remedy, such as returning personal property, reforming
> personal property policies, firing an abusive prison guard, or creating a
> better screening process for hiring such guards.  And when a prisoner
> obtains some measure of affirmative relief, he may elect not to pursue his
> claim for damages.  In either case, local actors are given the chance to
> address local problems, and at the very least, the time frame for the
> prisoner's damages is frozen or the isolated acts of abuse are prevented
> from recurring.   An across-the-board exhaustion requirement also
> promotes judicial efficiency. . . .  Moreover, even if only a small
> percentage of cases settle, the federal courts are saved the time normally

spent hearing such actions and multiple appeals thereto. . . .  In cases in
which inmate-plaintiffs exhaust their remedies in the administrative
process and continue to pursue their claims in federal court, there is still
much to be gained.  The administrative process can serve to create a
record for subsequent proceedings, it can be used to help focus and
clarify poorly pled or confusing claims, and it forces the prison to justify
or explain its internal procedures.  All of these functions help courts
navigate the sea of prisoner litigation in a manner that affords a fair
hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been

held that there is no futility exception to § 1997e's exhaustion requirement. Id.

Instead, courts have typically required across-the-board administrative exhaustion by

inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this

exhaustion requirement, holding that inmates must fully satisfy the administrative

requirements of the inmate grievance process before proceeding into federal court.

Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).  Applying this procedural default

standard to § 1997e's exhaustion requirement, courts have concluded that inmates who

fail to fully, or timely, complete the prison grievance process are barred from

subsequently litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d

289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v.

Beard, 183 F. App'x 178 (3d Cir. 2006).  Furthermore, applying this procedural

default component to the exhaustion requirement, <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d

Cir. 2004), it has been held that:

> As for the failure to the identify named defendants on the grievance form,
> . . . to the extent the identity of a defendant was "a fact relevant to the
> claim," . . . in the absence of any justifiable excuse, a[n] inmate's failure
> to properly identify a defendant constituted a failure to properly exhaust
> his administrative remedies under the PLRA.

<u>Williams v. Pennsylvania Dep't. of Corrections</u>, 146 F. App'x 554, 557 (3d Cir. 2005).[2]

Thus, "it is clear, regardless of the purpose of the requirement, that <u>Spruill</u> requires the

prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon

pain of procedural default." <u>Hemingway v. Ellers</u>, No. 07-1764, 2008 WL 3540526,

*11 (M.D.Pa. Aug.12, 2008).

This broad rule favoring full exhaustion admits of one, narrowly defined

exception. If the actions of prison officials directly caused the inmate's procedural

default on a grievance, the inmate will not be held to strict compliance with this

exhaustion requirement. <u>See</u> <u>Camp v. Brennan</u>, 219 F.3d 279 (3d Cir. 2000).

However, case law recognizes a clear "reluctance to invoke equitable reasons to

---

[2]While the <u>Williams</u> decision is not precedential, it is highly persuasive as a
"paradigm of the legal analysis [this Court] should . . . follow." <u>Drinker v.
Colonial Sch. Dist.</u>, 78 F.3d 859, 864 n.12 (3d Cir. 1996). We find the reasoning
in <u>Williams</u> compelling, and recommend that this reasoning be extended to the
instant case.

excuse [an inmate's] failure to exhaust as the statute requires." <u>Davis v. Warman</u>, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." <u>Davis v. Warman</u>, <u>supra</u>, 49 F. App'x at 368. <u>See also</u> <u>Brown v. Croak</u>, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); <u>Camp v. Brennan</u>, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

However, in the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the

Department of Corrections policies were not clearly explained to him.  Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust.  Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed.  Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Thus, in this setting, the Prison Litigation Reform Act requires that an inmate fully exhaust his administrative remedies before proceeding into federal court, an administrative exhaustion requirement which entails full compliance with grievance procedures and timelines, as well as the basic requisite that the inmate identify those against whom he has a grievance during the administrative process before he may name these individuals as defendants in a federal lawsuit.

Judged against these benchmarks, this complaint fails since Dr. Koza has demonstrated, without contradiction by the plaintiff, that none of the matters set forth in the complaint with respect to her have been fully and properly exhausted within the

prison grievance system.  This failure to exhaust is fatal to this case, and compels dismissal of Dr. Koza from this action.

Furthermore, the gravamen of Mayo's complaint against Dr. Koza is that she violated the plaintiff's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs. Mayo faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities.  To sustain such a claim, Mayo must plead facts which:

> [M]eet two requirements:  (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted).  In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id.  "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim.  See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff

complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.'  Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.'  Id . at 837."  Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Mayo is required to allege facts that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104.  Such indifference may be

evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation.   Estelle, 429 U.S. at 106.   "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).   Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").   Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a

physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; <u>see, e.g.</u>, <u>Ham v. Greer</u>, 269 F. App'x 149 (3d Cir. 2008); <u>James v. Dep't of Corrections</u>, 230 F. App'x 195 (3d. Cir. 2007); <u>Gillespie v. Hogan</u>, 182 F. App'x 103 (3d Cir. 2006); <u>Bronson v. White</u>, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); <u>Gindraw v. Dendler</u>, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of

> an eighth amendment violation." . . . . [The inmate] alleged no undue
> delay in receiving treatment and, as the district court noted, the evidence
> he presented established that he received timely care . . . . Although [an
> inmate plaintiff] may have preferred a different course of treatment, [t]his
> preference alone cannot establish deliberate indifference as such second-
> guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment).  Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors

over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

Here, according to Mayo,  in September 2012 he advised Dr. Koza that he was feeling extreme anxiety. (Doc. 10, ¶55.)  Dr. Koza immediately responded to Mayo's concern, encouraging and counseling him, and offering to adjust his anti-anxiety medications. (Id., ¶56.)  These factual averments, the only well-pleaded allegations in Mayo's complaint regarding the care he received from Dr. Koza, rebut any assertion of deliberate indifference.  Quite the contrary, they display prompt, compassionate care and concern for Mayo on the doctor's part.  Since the facts pleaded by Mayo refute the Eighth Amendment claims brought by Mayo against Dr. Koza that claim fails as a matter of law and should be dismissed.

In sum, this merits analysis reveals that this motion to dismiss is meritorious. Therefore, we find that all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in a profound way with respect to Dr. Koza, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that the plaintiff has no right to relief, and the plaintiff has declined to respond to court orders, or otherwise litigate these claims. On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend.

## III.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that defendant Koza's motion to dismiss (Doc. 33.), be GRANTED and the plaintiff's complaint be dismissed with respect to defendant Koza.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of May, 2015.

_**S/MARTIN C. CARLSON**_
Martin C. Carlson
United States Magistrate Judge