## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ALFRED ALONZO MAYO,**            :
                                   :
      **Plaintiff**              :      **Civil No. 3: 13-CV-1174**
                                   :
**v.**                             :      **(Judge Caputo)**
                                   :
**JOHN WETZEL, et al.,**           :      **(Magistrate Judge Carlson)**
                                   :
      **Defendants**             :

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

This case comes before the Court for consideration of a motion to dismiss, or in the alternative for summary judgment, filed by the correctional defendants. (Doc. 34.) That motion, in turn, calls upon us to consider the nature and extent of Mayo's compliance with the exhaustion of his prison grievances, exhaustion which is required as a prerequisite to filing a lawsuit under Prison Litigation Reform Act which provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This question of administrative exhaustion is presented to the Court on a factual record which is undisputed, and

against a procedural backdrop where Mayo, to his credit, candidly acknowledges shortcomings in his administrative exhaustion efforts.   In consideration of this acknowledged failure to fully exhaust these remedies, for the reasons set forth below it is recommended that the motion to dismiss, or in the alternative for summary judgment, be granted.

The plaintiff, Alfred Mayo, is a state inmate who was formerly housed at the State Correctional Institution (SCI) Dallas.  Mayo commenced this action by filing a complaint in May of 2013, (Doc.1.), a complaint which Mayo subsequently amended in October 2013.  (Doc. 10.)  In this amended complaint Mayo brought various federal civil rights claims under 42 U.S.C. §1983, against some 36 different defendants.   While the far-reaching scope of this complaint cannot be easily summarized, in broad strokes Mayo alleged three classes of claims against these defendants.   First, according to Mayo he had been subjected to conditions of confinement which constituted cruel and unusual punishment in violation of the Eighth Amendment.   In addition, Mayo alleged that medical personnel displayed deliberate indifference to his medical needs in violation of the Eighth Amendment. Finally, Mayo asserted that he had also been forced to endure numerous acts of retaliation as a result of the exercise of his First Amendment rights.  (Id.)

We have recommended the dismissal of a number of individual parties and claims, recommendations which the district court has adopted. (Doc. 51.)[1] However, the defendants have also sought broad dismissal of Mayo's claims and allegations based largely upon his alleged failure to fully exhaust his administrative remedies within the prison system prior to filing this action. (Doc. 34.) In support of this motion, the defendants have filed copies of the pertinent prison grievances submitted by Mayo, documents whose authenticity and accuracy Mayo does not contest. (Doc. 36, Exhibits.)

The defendants have also explained that the Pennsylvania Department of Corrections has a three-tiered system to appeal misconducts (pursuant to DC-ADM 801) and a three-tiered grievance system (pursuant to DC-ADM 804). These systems serve as an inmate's administrative remedy for grievances and to appeal misconducts. The misconduct appeal system consists of: (1) an appeal from the Hearing Examiner to the Program Review Committee (PRC); (2) an appeal to the Facility Manager; and (3) an appeal to the Chief Hearing Examiner's Office, Office of Chief Counsel. Failure to appeal a finding of misconduct to final review constitutes a failure to

---

[1]Specifically, eleven defendants– defendants Dimascio, McCallum, Wetzel, Barnacle, Varner, Damore, Ellers, Williams, Lewis, Degnan, and Koza– have been dismissed from this action.

exhaust administrative remedies regarding that misconduct.   Hagan v. Chambers, 2010 WL 4812973, at *6, *18 (M.D. Pa., Nov. 19, 2010).

Likewise the Department of Corrections has a three-tier system in place for resolution of other inmate grievances, a process which consists of:  (1) an initial review by a Facility Grievance Coordinator; (2) appeal to the Superintendent; and (3) appeal to the Secretary's Office for final review.  An inmate must exhaust all three stages of the pertinent system prior to filing a civil right suit.  Further, the inmate must "specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.  If the inmate desires compensation or other legal relief normally available from a court, the inmate shall request the specific relief sought in his/her initial grievance."  Finally, the inmate must identify the individuals directly involved in the events being grieved.

In this case, the defendants contend that the undisputed prison grievance records disclose that in many instances Mayo either failed to fully exhaust several of the grievances which he submitted to prison officials,[2] or failed to comply with other

---

[2]For example, Mayo claims exhaustion of all grievances listed in the complaint including grievances 453918 (Doc. 10 at ¶ 174, alleging retaliation by C.O. Silva), 453923 (id. at ¶ 173, alleging retaliation and deliberate indifference by Psychologist Dold), 454573 (id. at ¶ 175, alleging retaliation by C.O. Young), 455995 (id. at ¶ 176, alleging retaliation by Lanning).  However, a review of prison grievances records shows that exhaustion, these grievances have not been exhausted.  Further, another grievance, grievance 426586 was not timely appealed

procedural requirements of the grievance process by submitting required paperwork with his grievances, a procedural default which led to the denial of those grievances.[3] In other instances, Mayo submitted numerous grievances relating to the condition of his confinement.   These grievances were fully exhausted but did not identify individual staff who were alleged to have participated in the activities about which Mayo complained, as required by prison rules.[4]   Likewise, the defendants insist that Mayo failed to fully grieve the one prison misconduct citation which he refers to in his complaint.[5]

---

and, therefore, was not fully exhausted.

[3]Mayo failed to attach the required documents to grievances 425855 (Shambaugh Attach. 18) alleging he witnessed an assault on an inmate, and 416049 (Shambaugh Attach. 16), and 416407 (Shambaugh Attach. 12) alleging that he did not receive his copies.  Therefore, those grievances were denied.

[4]Mayo failed to name individuals in numerous exhausted grievances including 420202 (Shambaugh Attach. 3) regarding cell conditions, 410268 (Shambaugh Attach. 4), 411513 (Shambaugh Attach. 5), 411516 (Shambaugh Attach. 14), 411519 (Shambaugh Attach. 6), 412023 (Shambaugh Attach. 7), 412144 (Shambaugh Attach. 8), 416765 (Shambaugh Attach. 9), 416687 (Shambaugh Attach. 10), and 420401 (Shambaugh Attach. 11) and 416407 (Shambaugh Attach. 12) regarding not receiving his copies from the library, and 420628 (Shambaugh Attach. 13) regarding his access to mail.

[5] According to the defendants Mayo claims exhaustion of misconduct finding A725390 for assault on a Corrections Officer, but Mayo did not appeal to the Superintendent.  Mayo alleges an attempted appeal to the Superintendent, which he admits was rejected for failure to follow procedures.  Then after a delay due to being out of the institution, he was provided additional time to properly appeal.  (*See* Doc. 10 ¶¶ 80-81, 84, 87-90).  However, he does not allege that he

Finally, in two instances, a retaliation claim against defendants Michael Kaye, Unit Manager, and Greg Gordner and a medical care claim against defendants Stanley Bohinski and Myron Stanishefsi, the defendants concede that Mayo has fully exhausted his administrative remedies, but argue that Mayo has otherwise failed to state a claim upon which relief may be granted.

Mayo apparently agrees with the defendants on this score, stating in his response to this motion that: "for purpose of these proceedings, Plaintiff will only brief his Eighth Amendment Cruel and Unusual Punishment claim related to his conditions of confinement while confined ain the Restrictive Housing Unit at the State Correctional Institution at Dallas. *Plaintiff will concede to the dismissal of all other claims raised in his Amended Complaint*. (Doc. 41, p. 2.)(emphasis added). Given this concession by Mayo, all retaliation and Eighth Amendment medical care claims, including those claim made against defendants Michael Kaye, Greg Gordner, Stanley Bohinski and Myron Stanishefsi, should be dismissed.

As to Mayo's remaining Eighth Amendment conditions of confinement claims, Mayo candidly acknowledges that his grievances did not name any individual defendants and specifically concedes a procedural default on his part with respect to

_____

then appealed to the Superintendent using appropriate procedures.  Instead, he attempted to appeal directly to final review, but that appeal was denied.

defendants Sowga and Buck.  (Doc. 41, p. 6.)  Nonetheless, Mayo argues that "it is possible for Plaintiff's procedural default to be excused." (Id.)  Relying upon cases construing a prior version of these prison rules, Mayo argues that even if these officials were not named in his grievance they may still be held personally liable if they fell "fairly within the compass of the grievance." (Doc. 41, p. 7.)  Urging this interpretation of the PLRA's exhaustion requirement upon us, Mayo claims that the following six prison officials fall within the compass of his grievances:  Defendants Buck, Sowga, Mosier, Lucas, Mahally, and Walsh.  Mayo makes no exhaustion arguments on behalf of the remaining 30 defendants named in this complaint.

Further, with respect to these six defendants, the only defendants as to whom that Mayo now claims that "it is possible for Plaintiff's procedural default to be excused," we note that none of these individuals were named in Mayo's grievances. Further, as to two of these defendants, Buck and Sowga, Mayo plainly admits that he has procedurally defaulted.  Finally, with respect to the remaining four defendants as to whom Mayo seeks an excuse of his procedural default, the only basis for asserting that they fall within the compass of his grievance, is that they processed the grievance after-the-fact.

It is against the backdrop of this factual record, a record marked by an acknowledged failure of full exhaustion, that we consider this motion to dismiss, or

in the alternative, for summary judgment.  For the reasons set forth below, it is recommended that this motion be granted.

## II. <u>Discussion</u>

### A. <u>Standard of Review-Motion to Dismiss, or in the Alternative, Summary Judgment</u>

The Defendants have framed this motion as one seeking dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56.  When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motions shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(d).  Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so.  <u>Id.</u>; <u>Garcia v. Newtown Twp.</u>, No. 09-CV-3809, 2010 U.S. Dist. LEXIS 20380, 2010 WL 785808, at *3 (E.D. Pa. March 5, 2010).  However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Court of Appeals of the Third Circuit has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." <u>Latham v. United States</u>, 306 F. App'x 716, 718 (3d Cir. 2009) (citing <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 578-79 (3d Cir. 1996)).

8

At the outset, a number of the defendants' claims attack the legal sufficiency

of the allegations made by Johnson in this amended complaint.  To the extent that this

motion makes a facial attack upon the sufficiency of the complaint, we will treat the

motion as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, which provides that a complaint should be dismissed for "failure to state

a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  With respect to

this benchmark standard for legal sufficiency of a complaint, the United States Court

of Appeals for the Third Circuit has aptly noted the evolving standards governing

pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years.  Beginning with the Supreme Court's opinion in <u>Bell
> Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our
> opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir.
> 2008)] and culminating recently with the Supreme Court's decision in
> <u>Ashcroft v. Iqbal</u>  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards
> have seemingly shifted from simple notice pleading to a more
> heightened form of pleading, requiring a plaintiff to plead more than the
> possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>,

9

20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v.

Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court

need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged."  <u>Associated Gen. Contractors of Cal. v. California State Council of

Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic

Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a

plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do." <u>Id.</u> at 555.  "Factual allegations must be enough to raise a right

to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored

that a trial court must assess whether a complaint states facts upon which relief can

be granted when ruling on a motion to dismiss.  In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662

(2009), the Supreme Court held that, when considering a motion to dismiss, a court

should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679.  According to the

Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." <u>Id.</u> at 678.  Rather, in conducting a

review of the adequacy of complaint, the Supreme Court has advised trial courts that

they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than

mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis.  First,
> the factual and legal elements of a claim should be separated.  The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions.  Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to  show that the plaintiff has a 'plausible claim for relief.'  In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to 'show' such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-

step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead

to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id.</u>" <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In other instances, the defendants invite us to consider matters outside the pleadings when ruling upon this motion. To the extent that we are asked to consider uncontested facts beyond the pleadings we will treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P., Rule 56. Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials."  Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial."  Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient."  Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare

assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985)(citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  <u>See</u> <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

### B.     The Prison Litigation Reform Act's Exhaustion Requirement

The Defendants urge the Court to grant summary judgment on the plaintiff's claims because Mayo failed to fully exhaust the administrative remedies available to him under Department of Corrections procedures.  In this case Mayo's alleged failure to timely pursue these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Section 1997e's exhaustion requirement applies to a wide-range  of

inmate complaints, including damages complaints like those made here grounded in

alleged violations of the Eighth Amendment.  See Spruill v. Gillis, 372 F.3d 218 (3d

Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).  While this exhaustion

requirement is not a jurisdictional bar to litigation, this requirement is strictly

enforced by the courts.  This rigorous enforcement is mandated by a fundamental

recognition that § 1997e's exhaustion requirement promotes important public

policies.  As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of
> exhaustion requirements.  They include (1) avoiding premature
> interruption of the administrative process and giving the agency a
> chance to discover and correct its own errors; (2) conserving scarce
> judicial resources, since the complaining party may be successful in
> vindicating his rights in the administrative process and the courts may
> never have to intervene; and (3) improving the efficacy of the
> administrative process.  Each of these policies, which Congress seems
> to have had in mind in enacting the PLRA, is advanced by the across-
> the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a
> comprehensive exhaustion requirement better serves the policy of
> granting an agency the "opportunity to correct its own mistakes with
> respect to the programs it administers before it is haled into federal
> court."  Moreover, "even if the complaining prisoner seeks only money
> damages, the prisoner may be successful in having the [prison] halt the
> infringing practice" or fashion some other remedy, such as returning
> personal property, reforming personal property policies, firing an
> abusive prison guard, or creating a better screening process for hiring
> such guards.  And when a prisoner obtains some measure of affirmative
> relief, he may elect not to pursue his claim for damages.  In either case,
> local actors are given the chance to address local problems, and at the
> very least, the time frame for the prisoner's damages is frozen or the
> isolated acts of abuse are prevented from recurring.  An across-the-board

exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . .  In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained.  The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures.  All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).  Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d

289 (3d Cir. 2000); <u>Bolla v. Strickland</u>, 304 F. App'x 22 (3d Cir. 2008); <u>Jetter v. Beard</u>, 183 F. App'x 178 (3d Cir. 2006).

Furthermore, applying this procedural default component to the exhaustion requirement, <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004), it has been held that:

> As for the failure to the identify named defendants on the grievance form, . . . to the extent the identity of a defendant was "a fact relevant to the claim," Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA.

<u>Williams v. Pennsylvania Dep't. of Corrections</u>, 146 F. App'x 554, 557(3d Cir. 2005).[6]  Indeed, this Court has previously acknowledged in Mayo's case the necessity under the PLRA of complying with state grievance procedures and properly identifying those an inmate wishes to sue in his administrative grievances.  See <u>Mayo v. Wetzel</u>, No. 3:13-CV-1174, 2015 WL 3935488, at *8 (M.D. Pa. May 29, 2015) <u>report and recommendation adopted</u>, No. 13-CV-1174, 2015 WL 3939287 (M.D. Pa. June 26, 2015)(Caputo, J.).  Thus, "it is clear, regardless of the purpose of the

---

[6]While the <u>Williams</u> decision is not precedential, it is highly persuasive as a "paradigm of the legal analysis [this Court] should . . . follow." <u>Drinker v. Colonial Sch. Dist.</u>, 78 F.3d 859, 864 n.12 (3d Cir. 1996).  We find the reasoning in <u>Williams</u> compelling, and recommend that this reasoning be extended to the instant case.

requirement, that <u>Spruill</u> requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." <u>Hemingway</u> <u>v. Ellers</u>, No. 07-1764, 2008 WL 3540526, *11 (M.D.Pa. Aug.12, 2008).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. <u>See</u> <u>Camp v. Brennan</u>, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." <u>Davis v. Warman</u>, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." <u>Davis v. Warman</u>, <u>supra</u>, 49 F. App'x at 368. <u>See also</u> <u>Brown v. Croak</u>, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); <u>Camp v. Brennan</u>, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits

of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts.  Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him.  Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Furthermore, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust.  Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed.  Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

## C.   This Complaint Should Be Dismissed

Judged against these legal guideposts, we recommend that Mayo's complaint be dismissed for failure to exhaust his administrative remedies.  At the outset, we note that Mayo has conceded the dismissal of all of the claims except for Mayo's conditions of confinement claims against six defendants, defendants Buck, Sowga, Mosier, Lucas, Mahally, and Walsh.  Thus, Mayo acknowledges that: "for purpose of these proceedings, Plaintiff will only brief his Eighth Amendment Cruel and Unusual Punishment claim related to his conditions of confinement while confined ain the Restrictive Housing Unit at the State Correctional Institution at Dallas. *Plaintiff will concede to the dismissal of all other claims raised in his Amended Complaint.* (Doc. 41, p. 2.)(emphasis added).  Mayo also candidly acknowledges that his grievances did not name any individual defendants and specifically concedes a procedural default on his part with respect to defendants Sowga and Buck.  (Doc. 41, p. 6.)  Given these concessions by Mayo, the defendants are entitled at the outset to seek the dismissal of all claims in this litigation except for those condition of confinement claims that have not been conceded by Mayo relating to defendants Buck, Sowga, Mosier, Lucas, Mahally, and Walsh.  See Ball v. SCI Muncy, 385 F. App'x 211, 213 (3d Cir. 2010)(affirming dismissal of claims that the plaintiff concedes were unexhausted.)

As to these remaining claims, which Mayo contests, his argument in favor of avoiding dismissal for failure to exhaust rests upon a thin reed.  While Mayo admits that none of these officials were named in his grievance, as required by the Department of Corrections' current grievance policy,  Mayo argues that even if these officials were not named in his grievance they may still be held personally liable if they fell "fairly within the compass of the grievance."  (Doc. 41, p. 7.)

There are several difficulties with this proposition.  First, it ignores the language of the Department of Corrections grievance policy which calls upon inmates to identify the persons who they wish to hold accountable for the acts which are the subject of a grievance.  Mayo's failure to comply with this aspect of the grievance process has substantive legal significance for him under the PLRA since it is well established that:  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones v. Bock, 549 U.S. 199, 218 (2007).  In addition, Mayo's argument fails to take into account that this Court has consistently held that, under the current grievance procedure, the failure to name correctional officers in a grievance is a failure to fully and properly grieve a complaint as to that officer, and serves as a procedural bar to later litigation.  See, e.g., Williams v. Pennsylvania Dep't. of

Corrections, 146 F. App'x 554, 557(3d Cir. 2005); Mayo v. Wetzel, No. 3:13-CV-1174, 2015 WL 3935488, at *8 (M.D. Pa. May 29, 2015) report and recommendation adopted, No. 13-CV-1174, 2015 WL 3939287 (M.D. Pa. June 26, 2015)(Caputo, J.); Hemingway v. Ellers, No. 07-1764, 2008 WL 3540526, *11 (M.D.Pa. Aug.12, 2008).

Mayo's efforts to avoid this outcome by arguing that "it is possible for Plaintiff's procedural default to be excused," even if these officials were not named in his grievance and urging that they may still be held personally liable if they fell "fairly within the compass of the grievance." (Doc. 41, p. 6-7.), are unpersuasive on several scores.  First, the case law which Mayo cites for this proposition generally relates to prior versions of this prison grievance policy, and not the policy currently in effect within the Department of Corrections.  For example, while Mayo correctly notes that in Spruill v. Gillis the court found that the prison's grievance process excused an inmate's procedural default of failing to name the individuals involved in his grievance, Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004), that ruling arose in the context of a grievance procedure which only encouraged inmates to name staff, stating that an inmate "should" identify the staff involved in incidents that are grieved.  Id.  The current policy has amended this permissive language, and inserted instead words of command, stating that an inmate "shall" identify the persons involved.  That current policy, and its more mandatory language, has been construed

by the courts as requiring proper identification of correctional staff in grievances as a prerequisite to litigation in federal court.

But even if we accepted the view that this procedural default could be excused in some measure, that excuse would not seem to bring all of thee six defendants named by Mayo in his response to this motion as culpable actors within the compass of his grievance in a way which would support civil liability. Defendants Mosier, Lucas, Mahally, and Walsh appear to be named by Mayo as persons within the compass of his grievance because they either processed or received copies of his grievance after-the-fact.

To the extent that Mayo's claims against defendants Mosier, Lucas, Mahally, and Walsh rest on the premise that these officials did not after-the-fact act favorably upon his past grievances, this claim also fails. An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F.

App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).   See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").   As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system.  The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances.  See Inmates

of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v.

Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).  In sum, to the

extent that Mayo premises the adequacy of exhaustion and the civil liability of these

defendants upon his dissatisfaction with the processing of his past grievances, these

assertions do not suffice to state a constitutional tort claim.   Therefore, these

defendants are entitled to be dismissed from this case.

Thus our assessment of this case leads us to conclude that Mayo had failed to

administratively exhaust his claims, a failure of exhaustion which Mayo himself

largely concedes.  Since this exhaustion was a legal prerequisite to litigation, this

largely acknowledged failure of exhaustion now compels the dismissal of this lawsuit.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

defendants' motion to dismiss, or in the alternative, for summary judgement, (Doc.

34.) be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,

written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2d day of July 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge